(98 South. 281)

### LIVINGSTON v. LIVINGSTON et al.

### ALEXANDER et al. v. LIVINGSTON.

### (3 Div. 603, 603A.)

(Supreme Court of Alabama. June 28, 1923. Rehearing Denied Dec. 13, 1923.)

1. **Mortgages**  156 — **Lack of mortgagee's knowledge of insanity of mortgagor's vendor unavailing.**

Where mortgagor of land had notice of insanity of his grantor, and was not a purchaser in good faith or for valuable consideration, notwithstanding that his mortgagees had neither knowledge nor actual notice of such incapacity, under Code 1907, §§ 3347, 3348, such lack of knowledge was not available.

2. **Insane persons**  61 — **Deeds void.**

The deed of an insane person is absolutely void.

3. **Vendor and purchaser**  239(9) — **Purchaser from grantee holding under void deed not protected.**

An innocent purchaser from a vendee holding under a void deed is not protected.

4. **Tenancy in common**  13 — **Possession of one tenant is possession of cotenant.**

The possession of one tenant in common is possession of a cotenant.

5. **Tenancy in common**  15(7, 8) — **Title established by 10-year possession under grantee's insane mother, as against coheir's claim.**

Where a mother, while non compos mentis, deeded land to her son, who went into posses-

sion and dealt with it as his own, borrowed money on it, and dealt with others concerning it on the strength that it was his, and from the date of the deed in 1908 for more than 10 years his coheir of the mother's estate had knowledge of his possession, knew, from his position as clerk in the son's office of probate judge, of the execution of the deed, never sought to assert rights as against parties dealing with the son with regard to the property, the son's possession was sufficient to establish title in him by adverse possession as against coheir.

**6. Executors and administrators ⊂⊃410—Decree of insolvency of estate held not to affect rights of heirs in suit against personal representatives.**

Where heirs filed a bill against an administrator of an estate and their guardian ad litem, charging that defendants had conspired to purchase claims against the estate at 50 per cent. discount, a decree of insolvency of the estate ascertained a status as between personal representatives and creditors, but did not affect complainant's rights.

Appeal from Circuit Court, Autauga County; B. K. McMorris, Judge.

Bill by Mary E. Livingston against Jeffie Roy Livingston and others, and cross-bill by James E. Livingston and Ella S. Livingston by their next friend, J. D. Roy, against Peyton E. Alexander and others. From a decree dismissing the original bill, complainant appeals; and from a decree overruling demurrer to the cross-bill respondents thereto appeal. Affirmed on both appeals.

W. A. Gunter, of Montgomery, for appellants.

The deed from Ella S. to George S. Livingston was by a non compos mentis, and therefore void. Code 1907, § 3348; Galloway v. Herndon, 131 Ala. 280, 31 South. 603; Wilkinson v. Wilkinson, 129 Ala. 279, 30 South. 578; Dougherty v. Powe, 127 Ala. 577, 30 South. 524; Dexter v. Hall, 15 Wall. 26, 21 L. Ed. 73; Rawdon v. Rawdon, 28 Ala. 566. The holding of George S. Livingston was permissive; being a tenant in common, he held for all. Tyler on Ejectment, 71; 3 Brickell's Dig. 16; Ashford v. Ashford, 136 Ala. 637, 34 South. 10, 96 Am. St. Rep. 82; 2 C. J. 134; Tiedman on Real Prop. § 700.

W. P. McGaugh, of Montgomery, for appellees.

The holders of the mortgages executed by George S. Livingston were entitled to the protection of the statute. Code 1907; § 3347; Hale v. Hale, 201 Ala. 28, 75 South. 150; Thomas v. Holden, 191 Ala. 142, 67 South. 992; Hughes v. Bullen, 209 Ala. 134, 95 South. 379. The decree should be sustained on the ground of adverse possession by George S. Livingston for ten years. The estate having been declared insolvent, demurrers to the cross-bill should have been sustained.

SAYRE, J. The opinion of this court on a former appeal may be found in 206 Ala. on page 186, 89 South. on page 520, under the name and style of Alexander v. Livingston. The causes of reversal appearing on that appeal were cured after the remandment of the cause. Upon a subsequent submission of the cause for a decree on the merits, complainant's bill was dismissed, and that decree is now under review.

By its decree, under review on former appeal, the trial court held that the mother of George S. Livingston, his grantor, was mentally incapable of executing the deeds to him, and this court on former appeal said:

"It appears from the evidence almost without conflict—but we express no opinion thereon as the case has to be reversed—that she was mentally incapacitated to execute voluntarily and intelligently the deeds at the time they were signed."

[1] The evidence on this question has undergone no change, and now, after further consideration, the court is clear to the conclusion that the grantor in these deeds was non compos mentis, and the deeds were and are nullities. The court is of opinion further, on evidence so clear and convincing as hardly to need statement, that grantee George S. Livingston well knew the condition of his mother's mind, for she had lived in the house with him for years, and he had attended to all her business affairs, and that for the conveyances in question he rendered no consideration whatever. The mortgagees had neither knowledge nor actual notice of the mental incapacity of their mortgagor's grantor; but that, in the present state of the law, can avail them nothing. The last clause of section 3347 of the Code provides that—

"The purchasers from such vendee, without notice of the insanity of the original vendor [vendee meaning a purchaser from an insane vendor in good faith and for a valuable consideration, including a mortgagee, as we have held], shall be protected in like manner and have the benefits of this section."

[2, 3] But, as we have said above, George S. Livingston was not a purchaser in good faith or for a valuable consideration, and it is the firmly settled law of this court that the deed of an insane person is absolutely void. Walker v. Winn, 142 Ala. 560, 39 South. 12, 110 Am. St. Rep. 50, 4 Ann. Cas. 537; Dougherty v. Powe, 127 Ala. 577, 30 South. 524, and cases there cited. It is settled likewise that a subsequent purchaser, holding under an original vendee in a void deed, though innocent, is not protected. Barden v. Grace, 167 Ala. 453, 52 South. 425, Ann. Cas. 1912A, 537. The very central fact in the law of bona fide purchase, to which all others are mere additions, is that the legal title passed into the bona fide pur-

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

chaser at the time and as part of his purchase. 2 Pom. Eq. Jur. (4th Ed.) § 767. The mortgagees in this case were not invested with the legal title; that remained in the original grantor until her death and then descended to her heirs at law as tenants in common. As against complainant and her interest in the lands, which she took by descent from her mother, the mortgagees or their assigns can by their muniments take nothing. This conclusion follows from section 3347 of the Code and our consideration of its proper operation and effect (Hughes v. Dempsey, 209 Ala. 375, 96 South. 435), and is made compulsory by section 3348 of the Code, ·the language of which is that—

"Except as provided in the preceding section [that is, except as provided in favor of purchasers from insane persons in good faith and for a valuable consideration], all contracts of an insane person are void."

[4, 5] Nevertheless, the decree dismissing complainant's bill was well advised. For more than 10 years after the death of complainant's ancestor, and before the commencement of this suit, George S. Livingston, the grantee ·in the void deeds, under whom, defendant mortgagees and their assigns claim, was in the adverse possession of the lands in controversy. After the death of his grantor, he and complainant were tenants in common, and his possession, without more, would not operate as· a disseisin of complainant, his cotenant, for, in contemplation of law, he held for her. But it is impossible to mistake the intent with which he held. He had undertaken to convey the entire fee (Abercrombie v. Baldwin, 15 Ala. 363), and it is conceded, as shown by the agreed statement of facts noted in the note of testimony, that—

"George S. Livingston was in the possession of this property—all the property involved in this suit—since the 8th day of July, 1908, and borrowed money at the bank and from mercantile firms, wholesale houses, and money lenders on the strength that the said Livingston was the owner of this property during all of this time, in the possession of it, receiving all rents and profits."

It was also agreed between the parties, and the agreement is noted in the note of testimony: "That· during the entire time ·since the execution of the said deeds from Ella S. Livingston to Geo. S. Livingston in the month of July, 1908, and up to the time of the death of said George S. Livingston, deceased, the said George S. had the open ·possession and control of both the property ·located in Prattville and the 400-acre plantation lying out west of Prattville, using the ·same and exercising acts of ownership in regard thereto the same as if he were the sole and absolute owner. And during all of said time, neither the said M. E. Livingston nor John R. Livingston made any claims to any interest therein, or sought to assert any rights in regard thereto as against any of the parties who dealt with the said G. S. Livingston with regard to said property." And the parties were also agreed that—

"During all of this time the complainant in this case was his clerk in the probate office [meaning that George S. Livingston was judge of probate and complainant was his clerk in that office] and that she was familiar with these deeds being on record and that the complainant knew of the execution of the deeds involved in this suit."

We consider that these agreements are sufficient to establish the title of George S. Livingston by adverse possession of 10 years as pleaded in the seventh · paragraph of the answer to the bill as last amended. Appellant on this issue places store by the deposition of Pleasye Northington, taken long before the admission and agreement noted by appellees, and statements are to be found therein which may be construed as opposed to the contention for an adverse holding; but these statements are ambiguous in their intendments and are left in that shape. On this issue complainant, though examined as a witness, had nothing to say; hence our conclusion that the case in this respect is controlled by the admission and agreement above referred to, which, in ·our judgment, are sufficient to establish, not only the fact of an adverse holding hostile in its inception and exclusive during its continuance, such as· would set the statute of limitations in motion as against strangers to the title under which complainant and defendants claim, but a repudiation of the rights of complainant as cotenant, and a claim of exclusive ownership brought home to her actual knowledge, thus establishing title in George S. Livingston, under whom, immediately, defendants claim possession, right and title. Kidd v. Borum, 181 Ala. 144, 61 South. 100, Ann. Cas. 1915C, 1226; Winsett v. Winsett, 203 Ala. 373, 83 South. 117. It results that on the original appeal the decree dismissing complainant's bill should be affirmed; and it is accordingly so ordered.

[6] The minor children, heirs at law of George S. Livingston, filed a cross-bill against their codefendants, the Alexanders, the one as administrator of the estate of George S., the other as their guardian ad litem, charging that they had conspired together in a "scheme of profiteering on the estate and property of said George S. Livingston and of orator and oratrix, his heirs, and accordingly purchased" claims against the estate at a great discount, 50 per centum or more, and against the administrator it is averred, in effect, that in sundry ways he has wasted and pillaged the estate, and cross-complainants elect to claim the benefit of such purchase of claims against the estate and to do equity by allowing to cross-defendant admin-

istrator what said claims cost him with interest. The suggestion now made on behalf of the demurrer is that, since the estate has been declared insolvent, the cross-complaining heirs have no interest to be affected by the matters complained of. But the decree of insolvency merely ascertained the status of the estate as between the personal representative and the creditors; as to cross-complainants it is res inter alios acta, not affecting their rights. Randle v. Carter, 62 Ala. 95. It results that the decree on the demurrer to the cross-bill must be affirmed.

Affirmed on both appeals.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.

McCLELLAN and SOMERVILLE, JJ., concur in the conclusion only.

THOMAS, J., not sitting.